UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| SASHA MEDINA WILSON, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. V-11-18 |
| § | |
| GENERAL MOTORS, LLC, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Plaintiffs Sasha Medina Wilson, Individually, as Representative of the Estate of Adrian Wilson, Deceased, and as Next Friend of A.M.W., a Minor; Frederick Campbell; and Cheryl Wilson's (collectively "Plaintiffs") Motion to Compel Regarding Drop Testing, Rollover Testing, and Other Dynamic Roof Testing Conducted by General Motors' Saab and Opel Divisions (Dkt. No. 27), to which Defendant General Motors, LLC ("GM") has responded (Dkt. Nos. 28, 29) and Plaintiffs have replied (Dkt. No. 31). Having considered the motion, response, reply, record, and applicable law, the Court is of the opinion that Plaintiffs' motion should be **GRANTED**.

**I. Background**

This action arises from a rollover accident involving a 1999 Oldsmobile Bravada SUV ("the Bravada") that was designed and manufactured by GM. Plaintiffs allege that, during this accident, the roof structure of the Bravada crushed in, causing severe and fatal injuries to Adrian Wilson ("Wilson"). Plaintiffs further allege that the Bravada was unreasonably dangerous and defective, and that if GM had performed drop testing, rollover testing, or other dynamic testing on the roof of the vehicle, the results would have indicated that a stronger roof structure was

necessary. In support of this claim, Plaintiffs have designated an automotive engineering expert who has performed drop testing on an exemplar vehicle and will offer opinions regarding the benefits of dynamic roof strength testing.

GM admittedly did not perform drop testing, rollover testing, or other dynamic testing on the roof of the Bravada and has defended this decision by arguing as its corporate policy that such testing is not "repeatable," "meaningful," or "appropriate." (*See* Mei-Ewing Dep., Dkt. No. 27, Ex. 5; Antonucci 5/19/2005 Dep., *Id.*, Ex. 6; Antonucci 6/28/2004 Dep., *Id.*, Ex. 7; Antonucci 9/21/2005 Dep., *Id.*, Ex. 8; Melocchi Dep., *Id.*, Ex. 9.) However, Plaintiffs argue, GM's "party line is contradicted by the fact that two of General Motors' divisions, Saab and Opel, have been conducting this kind of dynamic rollover and drop testing for many years" and "have made no secret of this fact." (Dkt No. 27 at 5—6.) As such, Plaintiffs' First Requests for Production (RFP) 119—130, Fourth Requests for Admission (RFA) 1—9, and Fourth RFPs 1 and 2 sought information and documents related to roof strength testing, roof strength evaluation, and dynamic roof strength tests conducted by GM's Saab and Opel divisions,[1] including documents GM had been ordered to produce in similar lawsuits. (*Id.*, Exs. 1—3.)

GM objected to these requests and has refused to produce any materials pertaining to testing conducted by Saab and Opel, claiming claim that these materials are irrelevant to this case. Plaintiffs now move the Court to order GM to comply with these discovery requests.

**II. Legal Standard**

As the Fifth Circuit has repeatedly instructed, "'[a] district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.'" *Beattie v. Madison County Sch. Dist.*, 254 F.3d

---

1. When the Bravada involved in this action was built by GM in 1999, both Saab and Opel were wholly-owned subsidiaries of GM.

2

595, 606 (5th Cir. 2001) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)). The party posing discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable. *See* FED. R. CIV. P. 37; *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006) ("[Rule] 37(a) [(3)(B)(iii) and (iv)] empowers the court to compel the production of documents . . . upon motion by the party seeking discovery."). Materials and information are discoverable if they are "relevant to any party's claim or defense" or if they "appear[] reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).

The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Knight*, 241 F.R.D. at 263. Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted. *See Spiegelberg Mfg., Inc. v. Hancock*, 2007 WL 4258246, at *1 (N.D. Tex. Dec. 3, 2007); *Gauthier v. Union Pacific R.R. Co.*, 2008 WL 247016, at *3 (E.D. Tex. June 18, 2008); *see also* FED. R. CIV. P. 26(b)(2) (Courts must limit discovery if: (1) the discovery sought is shown to be unreasonably cumulative or duplicative, or is more easily obtainable from another, more convenient source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the discovery outweighs its likely benefit.).

**III. Analysis**

GM objects to Plaintiffs' discovery requests related to drop testing, rollover testing, and other dynamic roof testing conducted by its Saab and Opel divisions as being overbroad and irrelevant. Because the European passenger cars Saab and Opel tested have wholly different roof

and body side structures than the Bravada, GM argues that the discovery Plaintiffs seek cannot be used to make any scientifically valid analysis of the Bravada's roof structure. GM further maintains that it did not rely on or utilize the Saab and Opel testing in any respect as part of its design and development of the Bravada's roof structure. Finally, GM claims that Saab and Opel did not perform rollover testing in connection with the design and development of a vehicle's roof structure, but instead typically conducted the rollover tests for marketing purposes shortly before production, after a vehicle's design was finalized. As such, GM argues that this testing is irrelevant because it was not performed for the purposes of possibly incorporating safer alternative designs.

Plaintiffs argue that, in an automotive product liability case alleging design defects that caused the roof to crush inward during a rollover, it is relevant to consider what roof strength tests were available to the manufacturer, including tests that were being conducted by the manufacturer's subsidiaries. Plaintiffs further maintain that the requested documents and information constitute rebuttal evidence to claims made by GM's corporate representatives that dynamic roof strength testing is "inappropriate" and not "meaningful." Finally, Plaintiffs argue that it is "patently unfair" for GM to criticize their experts for performing dynamic roof strength testing while concealing the fact that its own subsidiaries have been performing the same tests for years. The Court agrees.

The Texas Supreme Court has explained that "[w]hether a product was defectively designed must be judged against the technological context existing at the time of its manufacture." *Boatland of Houston, Inc. v. Bailey*, 609 S. W. 2d 743, 746 (Tex. 1980). "Thus, evidence of the actual use of, or capacity to use, safer alternatives is relevant insofar as it depicts the available scientific knowledge and the practicalities of applying that knowledge to a

4

product's design." *Id.* One Texas appellate court has also recognized "that many other decisions from courts around the nation reject the notion that discovery in a strict product liability case is uniformly limited to the specific product at issue." *In re Exmark Mfg. Co., Inc.*, 299 S.W.3d 519, 520 (Tex. App.—Corpus Christi 2009). Two cases cited with approval by the *In re Exmark* court are especially relevant here: *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 614–16 (D. Kan. 2005) (granting plaintiff's motion to compel the production of information concerning the defendant manufacturer's European version of a child car seat in a lawsuit involving a child car seat manufactured by the same parent corporation in the United States where the discovery was relevant to the feasibility of a safer alternative design) and *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122, 124–25 (S.D.N.Y. 1986) (holding that information about post-manufacture testing was relevant and discoverable in ATV rollover case even though it dealt with models other than the ATV model at issue in order to show feasibility of alternative designs) (parentheticals in *In re Exmark*).

The Court finds that whether drop testing, rollover testing, and other dynamic roof testing were scientifically available and economically feasible to GM when the Bravada was designed and manufactured is relevant to Plaintiffs' defective design claim. As such, information related to the actual use of such tests by GM's corporate subsidiaries divisions is discoverable.

As a final matter, the Court notes that Plaintiffs have cited a number of recent rollover and roof crush cases involving GM vehicles—including two in Texas state court—in which GM was ordered to produce the same materials that are being requested in this case. *See Sanchez, et al. v. General Motors Corp., et al.*, No. DC-07-530 (229th Dist.—Starr County, Tex. Jun. 18, 2008); *Luna vs. General Motors, et al.*, No. 2005-12-6031-G (404th Dist.—Cameron County, Tex. Apr. 2, 2008); *Cox v. General Motors Corp., et al.*, No. LS-1657-3 (Va. Cir.—Richmond

Oct. 6, 2005 & Jan 25, 2006); *Yeruski v. General Motors, et al.*, No. 2001 L 315 (12th Cir.—Will County, Ill. 2005). As such, it should not be unduly burdensome or oppressive for GM to locate and produce information responsive to Plaintiffs' requests.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Compel Regarding Drop Testing, Rollover Testing, and Other Dynamic Roof Testing Conducted by General Motors' Saab and Opel Divisions (Dkt. No. 27) is **GRANTED**. It is hereby **ORDERED** that, within fifteen (15) days after entry of this Order, GM shall produce to Plaintiffs all materials in its possession that are responsive to Plaintiffs' First RFPs 119—130 and Fourth RFPs 1 and 2, and it shall amend its responses to Plaintiffs' Fourth RFAs 1—9.

**SIGNED** this 14th day of May, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE